Judge Umderwood
delivered the opinion of the Court.
The county court of Nelson admitted to record, a paper purporting to be the last will and testament of Austin Hubbard, by which he devised to Narcissa, a slave, and his reputed daughter, all his estate “provided (as the instrument states) that her master or mistress, owner or proprietor, will let her go at a moderate price, if not, I will and bequeath all the property aforesaid, to Austin F. Hubbard, who, from the last account I received, is in the state of Tennessee, Winchester county.” Austin F. Hub bard was the reputed illegitimate son of the testator,, The heirs of Hubbard contest the validity of the will upon the single ground that the testator was of unsound mind at the time it was executed, and have prosecuted an appeal from thedecision of the Nelson county court.
It appears in proof, that Hubbard, until within a few years preceding his death, was a man well versed in business, and of considerable intelligence. The mental alienation which it is contended incapacitated him to make a will, proceeded altogether from his excessive use of ardent spirits. It is shown that for several years before his death, he was an habitual drunkard, and some of the witnesses say that his mind *59 was considerably impaired. Particular acts relied on as evidences of madness or derangement, in his fits of intoxication, are detailed. One witness says he would often cry out^ntfyfeder! murder!” with a view, as the witness belimJBKo collect the nigh neighbors, because he could notget his servants to attend to him, he being confined about twelve months before his death. If such exclamations were really used for such a purpose, it would rather prove the exercise and existence of the power of reasoning, than the want of it. Another witness proves that Hubbard begged the witness, when he was about to shave him, mot to cut his throat, and looked wild out of his eyes. The same witness proves that Hubbard acted, upon one occasion, without a proper regard to decency, and from these things, he inferred his derangement and incompetency “to transact his business, or to tak-e a sound view of his affairs.” That the foregoing evidence is amply sufficient to show that the testator had brutalized himself to a great extent, by indulging his appetite for ardent spirits, cannot be questioned. But still we are of opinion that the evidence of his sanity is such, as to make it our duty to affirm the order of the county court. Whatever may be our feelings of detestation towards drunkenness, on account of the moral and physical evils with which it afflicts mankind, still we cannot seize upon the acts of folly, which drunkards'so frequently display, and thereupon declare them incompetent to make last wills and testaments, in those intervals when they talk and act like rational beings. We are of opinion that the circumstances attending the execution of the will in question, show that Hubbard possessed, at the time, such sanity of mind as should uphold the disposition made by him, of the property. Hubbard requested the draftsman of the will, to attend him early in the morning, for the purpose of writing it. The draftsman did so, but when he got to Hubbard’s house, he told him that he was not then in a situation to do the business, and requested him to come again in the evening. The draftsman attended in the evening, when Hubbard dictated the will, and the draftsman wrote it, using, as he states, Hubbard’s own words, as near as he could, and believes he varied very little, if any. After the will was finished, Hubbard called *60 Narcissa and gave it to her for safe keeping, telling it was an important paper. Narcissa and her mother-had beerr hired by him for some years before Hubbard’s- death, and therefclj|ye no white persons Jiving with him when the willwSfc made. When the will was disposed of, he called for his bottle and said, after doing the most important act of bis life, he would take a drink of grog. Although the will was executed under these circumstances, the draftsman gave it as his opinion that Hubbard was too drunk to do business at that time. The facts greatly preponderate over the opinion of the witness. The language of the will, which must be considered'as Hubbard’s, speaks almost as strongly in favor of his sanity, as if he- bad' written it himself. The arrangements he made to execute the instrument, bis postponement of it from the morning until evening, his conversation, his recollection as to Austin F. Hubbard’s residence* whom it seems he had sent off', on account of some disagreement with him, and the manner in which he spoke of the faithful services of his reputed daughter, Narcissa, prove the existence of rational motives for his conduct, and the adoption of means to effectuate what may be reasonably supposed, the wishes of a man in his situation. Hence the inference, that he possessed a legal capacity to make a will. The obligation, in the nature of things, to protect and provide for illegitimate children, should be held as sacred as that to provide for- legitimates, indeed, it is the best civil atonement for the guilt of fornication, and it is even inforced by statutory-provisions. The fact that Hubbard undertook to make provision for a mulatto slave, whom he believed to be an illegitimate daughter, and to prefer her to a son not tainted by African blood, is sufficiently accounted for, by the faithful services of the one which be acknowledged, and the offensive conduct of the other, which had produced their separation. He may have preferred his reputed son notwithstanding the quarrel or difference between them, to any other of his relations, provided his daughter could not obtain her freedom. He could not reasonably have anticipated that Narcissa. would be de--tained in slavery, when the will secured to her owner a fair price. To counteract the cunning and avarice which he may have anticipated might spring ug *61 among his heirs, to detain Narcissa in slavery, he devised the estate to a discarded illegitimate son, in the event of more being asked by her owner than reasonable.
Denny, for the will; T. T. Crittenden, contra.
We think the solicitude of Hubbard, to provide for a mulatto child, no more evidence of insanity, nor as much, as incurring the shame of being the father, and as there is not the least evidence of any undue influence or fraud, we concur with the county court.
Wherefore, the order of the county court of Nelson, admitting the will to record, is affirmed with costs. *